UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
LARRY FREUDENBERG, Individually And
On Behalf of All Others Similarly        Civil Action No.
Situated,                                07 Civ. 8538

            Plaintiff,

   -against-                          CLASS ACTION

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN AND ROBERT J.
SIMMONS,

          Defendants.
------------------------------------X
WILLIAM BOSTON, Individually And On
Behalf Of All Others Similarly           Civil Action No.
Situated,                                07 Civ. 8808

            Plaintiff,

   -against-

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN AND ROBERT J.
SIMMONS,

          Defendants.
------------------------------------X
ROBERT D. THURMAN, Individually And
On Behalf Of All Others Similarly        Civil Action No.
Situated,                                07 Civ. 9651

            Plaintiff,

   -against-

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN AND ROBERT J.
SIMMONS,

          Defendants.
------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

```
-----------------------------------X
```
WENDY M. DAVIDSON, Individually
And On Behalf Of All Others               Civil Action No.
Similarly Situated,                       07 Civ. 10400

                    Plaintiff,

     -against-

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN AND ROBERT J.
SIMMONS,

                    Defendants.
```
----------------------------------X
```
JOSHUA FERENC, Individually And
On Behalf Of All Others Similarly         Civil Action No.
Situated,                                 07 Civ. 10540

                    Plaintiff,

     -against-

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN AND ROBERT J.
SIMMONS,

                    Defendants.
```
--------------------------------X
```

A P P E A R A N C E S:

     Attorneys for Plaintiff
     State Teachers Retirement System of Ohio

          ABBEY SPANIER RODD & ABRAMS, LLP
          212 East 39th Street
          New York, NY 10016
          By:  Judith L. Spanier, Esq.
               Jill S. Abrams, Esq.
               Nancy Kaboolian, Esq.

     Attorneys for Plaintiff
     Kristen-Straxton Group

BROWER PIVEN
488 Madison Avenue, Eighth Floor
New York, NY  10022
By:  David A.P. Brower, Esq.
     Elizabeth A. Schmid, Esq.


Attorneys for Plaintiff
Skandia Life Insurance Company Ltd.

     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
     780 Third Avenue, 48th Floor
     New York, NY  10017
     By:  Steven E. Fineman, Esq.
          Daniel P. Chiplock, Esq.


Attorneys for Plaintiff
Institutional Investor Group

     GRANT & EISENHOFER P.A.
     485 Lexington Avenue, 29th Floor
     New York, NY  10017
     By:  Jay W. Eisenhofer, Esq.
          Geoffrey C. Jarvis, Esq.


Attorneys for Plaintiffs
First Derivative Traders LP and Robert and Jessica Grant

     WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
     270 Madison Avenue
     New York, NY  10016
     By:  Gregory M. Nespole, Esq.
          Thomas H. Burt, Esq.
          Laurence J. Hasson, Esq.


Attorney for Plaintiff
Ira Newman

     LEVI & KORSINSKY, LLP
     39 Broadway, Suite 1601
     New York, NY  10006
     By:  Eduard Korsinsky

**Sweet, D.J.**

## I. **INTRODUCTION**

Presently pending before the Court are five securities class actions (collectively the "Action") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired securities of defendant E*Trade Financial Corporation ("E*Trade" or the "Company") between April 20, 2006, and November 9, 2007, inclusive (the "Class Period"). Violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder are alleged against E*Trade, Mitchell H. Caplan and Robert J. Simmons (collectively referred to as "Defendants").

Several motions have been made for consolidation pursuant to Rule 42, Fed. R. Civ. P. and for appointment as lead plaintiff in the consolidated action, pursuant to 15 U.S.C. § 78u-4(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of lead counsel.

The competing plaintiffs and their claimed losses are as follows:

| MOVANT | APPROXIMATE CLAIMED LOSSES (ROUNDED TO THE NEAREST DOLLAR) |
| --- | --- |
| Kristen-Straxton Group (KSG) | $133,425,508 |
| State Teachers Retirement System of Ohio (STRS) | $37,550,914 |
| Skandia Life Insurance Corporation Ltd. | $10,244,730 |
| Ira Newman (Newman) | $487,839 |

Additional motions filed by First Derivative Traders LP and Robert and Jessica Grant, and the Institutional Investor Group[1] have been withdrawn.  For the reasons set forth below, the actions are consolidated, KSG is appointed lead plaintiff, Brower Piven is appointed lead counsel, Newman is appointed co-lead plaintiff and Levi & Kersinsky is appointed co-lead counsel.  The Court reserves the ability to alter this structure at any time and for any reason, and will do so if it finds that the progress of the litigation is being delayed, that expenses are being unnecessarily enlarged, or if the structure established proves detrimental, in any way, to the best interests of the proposed class.

---

[1] The Institutional Investor Group is comprised of the Mississippi Public Employees Retirement System, AFA Livforsakringsaktiebolag, AFA Sjukforsakringsaktiebolag, AFA Trygghetsforsakringsaktiebolag and Kollektivavtalsstiftelsen TSL.

2

## II. PRIOR PROCEEDINGS

Five complaints were filed in the Southern District of New York: (1) Freudenberg v. E*TRADE Fin. Corp., No. 07 Civ. 8538 (S.D.N.Y.), filed October 2, 2007; (2) Boston v. E*TRADE Fin. Corp., No. 07 Civ. 8808 (S.D.N.Y.), filed October 12, 2007; (3) Thulman v. E*TRADE Fin. Corp., No. 07 Civ. 9651 (S.D.N.Y.), filed October 30, 2007; (4) Davidson v. E*Trade Fin. Corp., No. 07 Civ. 10400 (S.D.N.Y.), filed on November 16, 2007; and (5) Ferenc v. E*Trade Fin. Corp., No. 07 Civ. 10540 (S.D.N.Y.), filed November 21, 2007. The class period alleged in the complaints filed in the first three cases is December 14, 2006 to September 25, 2007. The complaint in the fourth-filed Davidson case expanded the Class Period to December 14, 2006 through November 9, 2007, and the complaint in the fifth-filed Ferenc case further expanded the Class Period to April 20, 2006 through November 9, 2007.

The complaints allege that E*Trade provides financial services to retail, corporate and institutional customers worldwide, including investing, trading, checking, money market and savings accounts, and that since its inception E*Trade has generated revenues from the commissions it charged customers who traded stocks on its website. The complaint further allege that

3

in 2003, E*Trade began purchasing mortgages, home-equity loans and other mortgage-related assets, and thereafter, throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's business, prospects and financial condition, including:  (1) the Company was experiencing increased delinquencies in its mortgage and home equity portfolios; (2) the Company had failed to adequately reserve for loan losses; (3) consequently, the Company would be forced to take $95 million in charge-offs and a provision for expenses of $245 million in the second half of 2007; (4) the Company had failed to timely record impairments on certain securities, and as a result, such portfolios were materially overvalued; and (5) as a result of the foregoing, the Company's statements about its 2007 financial and operational results were lacking in any reasonable basis when made.

It is further alleged that, subsequent to a series of negative partial disclosures regarding E*Trade that caused the value of E*Trade's publicly traded securities to decline significantly in August, 2007, E*Trade announced on September 17, 2007, that it was exiting the wholesale mortgage business, restructuring its institutional brokerage business, and revising its previously issued 2007 financial guidance.  E*Trade also disclosed that it expected charge-offs of $95 million and a

4

provision for expenses of \$245 million in the second half of 2007 due to an increased allowance for loan losses. In addition, E*Trade announced that it expected "severance, restructuring and other exit charges" of \$32 million as a result of its decision to exit and restructure the businesses. The Company also stated that it was revising its earnings guidance for 2007, to anticipated earnings per share ("EPS") ranging between \$1.05 and \$1.15 for the year, significantly lower than the Company's previously issued guidance in the range of \$1.53 to \$1.67 EPS for the year. As a result of this news, over the next six trading days E*Trade shares fell \$2.32 per share, or more than 16.3 percent, to close on September 25, 2007, at \$11.89 per share. These disclosures in the summer and fall of 2007 are alleged to have resulted in losses to the E*Trade Investor Class members estimated in the billions of dollars.

On October 2, 2007, counsel in the first filed securities action against E*Trade, Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 8538, caused a notice (the "Notice") to be published, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), which announced that a securities class action had been filed against E*Trade and advised putative class members that they had 60 days from October 2, 2007, to file a motion to seek appointment as a lead plaintiff in the action. The 60-day time period for Class

members to move to be appointed lead plaintiff under 15 U.S.C. §
78u-4(a)(3)(A)(b) expired on December 3, 2007. See Fed. R. Civ.
P. 6(a)(3).

The instant motions were heard and marked fully
submitted on January 16, 2008. There is no opposition to the
consolidation motions.

## III. **THE ACTIONS ARE CONSOLIDATED**

The PSLRA provides that "[i]f more than one action on
behalf of a class asserting substantially the same claim or
claims arising under this chapter has been filed," the court
shall not make the determination of the most adequate plaintiff
"until after the decision on the motion to consolidate is
rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the
Court "shall appoint the most adequate plaintiff as lead
plaintiff for the consolidated actions . . . ." Id.

Consolidation is appropriate where actions before the
Court involve common questions of law or fact. See Fed. R. Civ.
P. 42(a). These five putative class actions each seek relief on
behalf of classes of persons and entities that traded in E*Trade
securities during slightly different class periods, claiming

6

violations of the federal securities laws under Sections 10(b)
and 20(a) of the Exchange Act and Rule 10b-5 promulgated
thereunder.  The five actions assert virtually identical claims
based on virtually identical factual allegations.  As such, the
cases are well-suited for consolidation and are therefore
consolidated.

## IV.  **KSG IS APPOINTED LEAD PLAINTIFF AND NEWMAN IS APPOINTED CO-LEAD PLAINTIFF**

### A.  **The PSLRA Procedure**

The PSLRA establishes a statutory presumption that a
party is the most adequate plaintiff on a showing that it:

> (aa) has either filed the complaint or made
> a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has
> the largest financial interest in the relief
> sought by the class; and
>
> (cc) otherwise satisfies the requirements of
> Rule 23 of the Federal Rules of Civil
> Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking
appointment as lead plaintiff is the presumptive lead plaintiff,
the presumption can be rebutted only upon proof by a member of

7

the purported class that the presumptive lead plaintiff "will
not fairly and adequately protect the interests of the class" or
"is subject to unique defenses that render such plaintiff
incapable of adequately representing the class." 15 U.S.C. §
78u-4(a)(3)(B)(iii)(II).

## B. KSG is Appointed Lead Plaintiff

KSG is the "most adequate plaintiff." KSG is
comprised of Kristen Management Limited ("Kristen"), Straxton
Properties Inc. ("Straxton"), and Javed Fiyaz ("Fiyaz").
Kristen and Straxton have common ownership and are investment
companies organized and existing under the laws of the British
Virgin Islands. Vincent D. de Canniere ("Canniere") is sole
manager of both companies. Fiyaz, an individual investor who
resides in London, England, has a long-standing personal and
business relationship with Canniere that pre-dates their
investments in E*Trade. KSG timely moved for appointment as
lead plaintiff on December 3, 2008.

### 1. KSG Has the Largest Financial Interest

Courts have developed a four-factor test to determine
which party has the largest financial interest in the

8

litigation. The Court is to consider: "(1) the number of shares
purchased during the class period; (2) the number of net shares
purchased during the class period (i.e. the number of shares
retained during the period); (3) the total net funds expended
during the class period; and (4) the approximate loss suffered
during the class period." Strougo v. Brantley Capital Corp.,
243 F.R.D. 100, 104 (S.D.N.Y. 2007).

KSG expended a total of $308,526,898 on purchases of
E*Trade CFDs, purchasing securities equivalent to 12,764,763
shares of E*Trade common stock. KSG's losses break down among
the group's members as follows:

| | |
|---|---|
| Kristen Management Limited | $12,070,139 |
| Straxton Properties Inc. | $94,228,019 |
| Javed Fiyaz | $27,117,350 |
| TOTAL LOSSES | $133,415,508 |

The party with the next most significant losses is
STRS, which purchased a total of 4,360,800 shares, expending net
funds of over $48 million. STRS's alleged losses, at
$37,550,914, do not amount to even half of Straxton's alone.
Therefore, KSG has the largest financial interest of any party
seeking appointment as lead plaintiff.

### *KSG Is An Appropriate Group*

The PSLRA explicitly permits a "group of persons" to serve as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d Cir. 2001). However, the appointment of an aggregation of unrelated plaintiffs as lead counsel risks "defeat[ing] the purpose of choosing a lead plaintiff." In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997). "Appointing lead plaintiff on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." Donnkenny, 171 F.R.D. 158; see also In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001). Thus, the Court must reject a movant "group" with the largest losses on a determination that it is "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'" Id. at 307-08.

A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff

candidate so long as the group is relatively small and therefore presumptively cohesive. See, e.g., Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (aggregation of seven shareholders did not present group so cumbersome as to deliver control of litigation into the hands of the lawyers); In re Oxford Health Plans Inc., Sec. Litig., 182 F.R.D. 42 ,46 (S.D.N.Y. 1998) ("The Court is convinced that the limited size of the [plaintiff group] coupled with the scope of each individuals' loss will make the [plaintiff group], as reduced by the Court, an effective monitor of its counsels' performance, thereby fulfilling its purpose under the PSLRA."); cf. In re Flight Safety Techs., Inc. Sec. Litig., 231 F.R.D. 124, 129 (D. Conn. 2005) (finding that appointing eight unrelated and unfamiliar plaintiffs as co-lead plaintiffs, when no preexisting relationship was evident, would be counter to both the terms and the spirit of the PLSRA). A group consisting of persons with a pre-litigation relationship is more likely to be appointed lead plaintiff, on the logic that a more cohesive group is more likely to function smoothly. See, e.g., Xianglin Shi v. Sina Corp., 05 Civ. 2154 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005).

KSG has only three members, who submit that they have a longstanding pre-litigation relationship and a clear

11

understanding as to consultation, information sharing, and
management of the litigation.  Cf. Local 144 Nursing Home
Pension Fund v. Honeywell Int'l, Inc., No. 00-3605, 2000 U.S.
Dist. LEXIS 16712 at *13-14 (D.N.J. Nov. 16, 2000)
("cohesiveness of a group" demonstrated through declarations
"advis[ing] [the court] of' inter alia "its sophistication;
ability and inclination to actively oversee the litigation";
"the past and continued meetings between the [group's members]
and outside counsel"; "the fact that the investors chose outside
counsel (not vice versa)"; procedures and protocols to make
decisions in the case).  The appropriateness of KSG's
appointment is further supported by the fact that, as noted
above, Straxton's losses alone would qualify it as the party
with the largest financial interest in the litigation.  Cf.
Barnet v. Elan Corp., 236 F.R.D. 158, 162 (S.D.N.Y. 2005)
(holding that there was no evidence group of six investors was
formed in bad faith where "even were the Court to deconstruct
the Group, two of its individual members would still have the
'largest financial interest'").

## 2.   KSG Satisfies the Rule 23 Requirements

To qualify as the presumptive lead plaintiff KSG must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B).

Rule 23(a) provides that one or more members of a class may sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met. Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003); In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999) ("A wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." (quoting Fischler v. AMSouth Bancorporation, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. 1997)) (alteration in original)).

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's

13

liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d
285, 291 (2d Cir. 1992). However, the claims of the class
representative need not be identical those of all members of the
class. "[T]he typicality requirement may be satisfied even if
there are factual dissimilarities or variations between the
claims of the named plaintiffs and those of other class members,
including distinctions in the qualifications of the class
members." Bishop v. N.Y. City Dep't of Housing Pres. & Dev.,
141 F.R.D. 229, 238 (2d Cir. 1992).

STRS has challenged KSG's typicality on the grounds
that KSG purchased contracts for difference ("CFDs") rather than
E*Trade securities. STRS claims that, as a purchaser of CFDs
rather than common shares, KSG is subject to a number of unique
defenses that threaten to become the focus of the litigation.
However, a CFD is a "security" as that term is broadly defined
in the Securities Exchange Act of 1934,[2] and STRS has failed to

---

[2] The Act broadly defines "security" as

> any note, stock, treasury stock, security future, bond,
> debenture, certificate of interest or participation in any
> profit-sharing agreement or in any oil, gas, or other mineral
> royalty or lease, any collateral-trust certificate,
> preorganization certificate or subscription, transferable share,
> investment contract, voting-trust certificate, certificate of
> deposit for a security, any put, call, straddle, option, or
> privilege on any security, certificate of deposit, or group or
> index of securities (including any interest therein or based on
> the value thereof), or any put, call, straddle, option, or
> privilege entered into on a national securities exchange relating
> to foreign currency, or in general, any instrument commonly known
> as a "security"; or any certificate of interest or participation

14

establish any divergence between KSG's interests and those of

putative class members who purchased other types of securities.

Nor does it appear that STRS's proposed "potential unique

defenses," each of which is based on distinctions between CFDs

and common shares, risk diverting the focus of the litigation.

        In light of the Securities Exchange Act's broad

definition of "security," courts have appointed as lead

plaintiffs purchasers of a wide variety of financial

instruments.  Further, they often appoint purchasers of one type

of securities to represent purchasers of other types of

securities of the same issuer where the interests of those

purchasers are aligned.  See In re Sepracor Inc., 233 F.R.D. 52,

56 (D. Mass. 2005) (appointing purchaser of options as lead

plaintiff for class that included purchasers of all defendant

company's equity securities); see also In re Enron Corp. Sec.

Litig., 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("[C]ourts have

repeatedly concluded that stock purchasers can represent

purchasers of debt instruments and vice versa in the same

action."); Endo v. Albertine, 147 F.R.D. 164, 167 (N.D. Ill.

_____

in, temporary or interim certificate for, receipt for, or warrant
or right to subscribe to or purchase, any of the foregoing; but
shall not include currency or any note, draft, bill of exchange,
or banker's acceptance which has a maturity at the time of
issuance of not exceeding nine months, exclusive of days of
grace, or any renewal thereof the maturity of which is likewise
limited.

15 U.S.C. § 78c(a)(10).

1993) (appointing lead plaintiffs who purchased only common stock to represent class of purchasers of debentures, notes and common stock); Deutschman v. Beneficial Corp., 132 F.R.D. 359 (D. Del. 1990) (appointing lead plaintiff who purchased only call options to represent class of purchasers of call options and common stock).

For example, the American Depository Receipt ("ADR") is used in the U.S. to invest in non-U.S. companies and allow Americans to acquire an interest in foreign equity securities without taking ownership of the underlying foreign shares. See In re Vivendi Universale S.A. Sec. Litig., 381 F. Supp. 2d 158, 171-72 (S.D.N.Y. 2003). Purchasers of ADRs have been appointed as lead plaintiff where the class included purchasers of common stock as well. See Linn v. Allied Irish Banks, PLC, No. 02 Civ. 1738 (DAB), 2004 WL 2813133 (S.D.N.Y. Dec. 8, 2004) (appointing as lead plaintiff a purchaser of ADRs where class was defined to include, "all those who purchased [defendant company's] securities" during class period); see also In re Converium Holding AG Sec. Litig., No. 04 Civ. 7897 (DLC), 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) (plaintiff class included purchasers of shares and ADRs). Courts have also certified options traders to represent both derivatives and common stock traders in securities class actions. See, e.g., In re Sepracor Inc. Sec.

16

Litig., 233 F.R.D. at 56.  For instance, in In re Priceline.com
Inc. Sec. Litig., defendants argued that because one lead
plaintiff had traded almost exclusively in put options, he was
an unsuitable representative for class members who traded only
in common stock.  236 F.R.D. 89, 98 (D. Conn. 2006).  The court
rejected this argument because "his interests [we]re aligned
with those of the class and 'the link between the alleged
misrepresentation and either the price received (or paid) by the
plaintiff, or his decision to trade at a fair market price,'
remain[ed] intact."  Id. at 100 (quoting Basic, Inc. v.
Levinson, 485 U.S. 224, 248 (1988)).  Thus, "'[t]he fact that
plaintiffs might have different types of securities does not
require a separate class or co-lead plaintiffs because lead
plaintiffs need not satisfy all elements of standing with
respect to the entire lawsuit under the PSLRA.'"  In re: XM
Satellite Radio Holdings Sec. Litig., 237 F.R.D. 13, 20 (D.D.C.
2006) (quoting Averdick v. Hutchinson Tech., Inc., 05 Civ. 2095
(MJD/SRN), 2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006)).


          CFD purchasers acquire the future price movement of
the underlying company's common stock (positive or negative)
without taking formal ownership of the underlying shares.
Unlike calls and puts, which trade in tandem with, but not at
the same price as, the underlying publicly traded common stock,

the purchase and sale prices of CFDs are alleged to be identical to the prices quoted for shares of the underlying company's common stock on the public securities exchange. In advance of pricing the CFDs, actual matching shares of the underlying common stock are purchased or sold by the broker on the public securities exchange on which the common stock normally trades. The prices paid or received by the broker for those corresponding shares of common stock are the prices set for the CFDs representing those shares and charged to, or paid by, the customer. Because identical matched transactions occur in shares of the actual common stock immediately before the purchase or sale of the CFDs, any influence on the public market price of the underlying securities is also reflected in the price of the CFDs. CFDs have no fixed expiration date, CFD holders receive the benefit of any dividends paid on the underlying shares, and the CFD may include voting rights on the underlying shares.

STRS has failed to establish that KSG's claims are atypical, or subject to unique defenses on the grounds that the claims rely on the purchase of CFDs.

Nor does the sale by KSG of their E*Trade securities by August 20, 2007, prior to the end of the alleged class

18

periods in the current complaints, render them inadequate or atypical under the PSLRA, absent a showing that such divestiture creates divergent interests. See In re Gaming Lottery Sec. Litig., 58 F. Supp. 2d 62, 69-71 (S.D.N.Y. 1999) (rejecting defendants' argument that an in-and-out purchaser was an inadequate class representative because he sold as well as purchased at inflated prices); see also Montoya v. Mamma.com, Inc., No. 05 Civ. 2313 (HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005) (appointing lead plaintiff that was out of the subject stock before the end of the class period).

## C. **Newman is Appointed Co-Lead Plaintiff**

Although the other movants have failed to establish any respect in which KSG's interests are not aligned with the other putative class members, on the possibility that conflicts do ultimately arise, the interests of the class can be protected by the appointment of a co-lead plaintiff.

Newman has incurred the largest loss of any individual stock purchaser and has standing to pursue claims on behalf of various subclasses in this action. During the Class Period, Newman incurred substantial losses trading the common stock of E*Trade, as well as losses trading the options of E*Trade. He

also had an E*Trade brokerage account in which he incurred
losses trading E*Trade common stock during the Class Period.

Newman has timely moved for appointment and satisfies
the typicality requirement of Fed. R. Civ. P. 23(a)(3). His
claims arise out of the same course of conduct and are based on
the same legal theory of the other members of the class. See
Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993); In re
Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir.
1992).

It is appropriate under the circumstances described
above to have a co-lead plaintiff situated in this district
whose losses resulted from direct purchases of E*Trade stock.

## D.   Selected Counsel Are Approved

KSG has selected Brower Piven, a firm with offices in
New York City and Baltimore, Maryland, to serve as lead counsel.
As demonstrated by the firm's resume, Brower Piven attorneys
have more than 20 years of experience in successfully
prosecuting shareholder and securities class action litigation,
and have frequently served as lead or co-lead counsel in major

securities class actions before this Court and others
nationwide.

Newman has selected Levi & Korsinsky, LLP, which
specializes in federal securities class actions and derivative
litigation.  Its partners have served as lead counsel or co-lead
counsel in a substantial number of securities class actions.

Both firms are qualified to serve as counsel to the
class, Brower Piven as lead counsel and Levi Korsinsky as co-
lead counsel.

## V.   CONCLUSION

The motions to consolidate the actions are granted.
The motion of KSG to serve as lead plaintiff is granted,
Newman's motion is granted to the extent that he is appointed
co-lead plaintiff, the motions of STRS and Skandia are denied,
and the selection of counsel is approved.

It is so ordered.

New York, N.Y.
July  ( 6  , 2008

**ROBERT W. SWEET**
**U.S.D.J.**

21